UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

--------------------------------------------------------------X
                                           :

TREVOR SHAPIRO and JOHANNA QVIST,   :
                          Plaintiffs,   :

                                      :       23 Civ. 3964 (LGS)

           -against-           :

                                      :       **OPINION & ORDER**

TRUDY JACOBSON and STEPHEN       :
KOMOREK,                      :
                       Defendants.  :
--------------------------------------------------------------X
LORNA G. SCHOFIELD, United States District Judge:

Plaintiffs Trevor Shapiro and Johanna Qvist bring this action against Defendants Trudy Jacobson and Stephen Komorek alleging tortious interference with business relationships under New York state law.  Defendants move for summary judgment on Plaintiffs' claims.  For the following reasons, the motion is granted on Qvist's claim and Shapiro's claim with respect to EMG Models ("EMG") but denied on Shapiro's claim with respect to Joseph DeAcetis. Shapiro's claim for tortious interference with Him-Eros is dismissed because Shapiro lacks Article III standing to bring the claim.

## I.    BACKGROUND

The following facts are taken from the parties' submissions and are construed in favor of Plaintiffs as the non-moving parties.  *See Torcivia v. Suffolk Cnty.*, 17 F.4th 342, 354 (2d Cir. 2021).[1]

---

[1] The parties did not comply with Individual Rule III.B.3, which permits exhibits of no more than fifteen pages, nor did the parties seek leave to file excess pages.  The parties are directed to review carefully the Individual Rules, as future noncompliance will result in the noncompliant documents being stricken.

### A.    Plaintiff Shapiro

Beginning around 2013, Plaintiff Shapiro worked for a company called Cowboys4Angels to provide companionship services -- including attending work parties, meeting for dinner and drinks and participating in conversation.  In 2016, Shapiro met Defendant Jacobson through his work as a male companion.  The two became romantically involved, but the relationship soured.

After Shapiro ceased working for Cowboys4Angels, he pursued other business ventures. In February 2021, he and Cheyenne Lutek, his business partner, founded a company called Him-Eros, which also sought to provide companionship services.  Shapiro gave Lutek $600 to prepare Him-Eros for launch.  Lutek established a limited liability company and hired an attorney.  Shapiro and Lutek also selected around eight models who "were ready to be active" once the company launched.  Shapiro projects that Him-Eros would have made $662,400 in annual revenue, of which he would have received a percentage.  Separately, in May 2021, Shapiro entered a business relationship with EMG, a modeling agency, in an effort to secure work as a model.

Meanwhile, in March 2021, Jacobson hired Conflict International to perform private investigative services with respect to Shapiro.  In June 2021, Defendant Komorek, who worked for Conflict International, delivered the results of the firm's investigation of Shapiro to a news outlet called Law Enforcement Today.  Komorek's direct report assured Law Enforcement Today that the results of the investigation were "sourced, true, and accurate to the best of [Conflict International's] abilities."

Shortly thereafter, negative press about Shapiro was published online, including in Law Enforcement Today.  For instance, on June 19, 2021, Law Enforcement Today posted an article alleging that Him-Eros was "a cover for a male prostitution operation."  In July 2021, Shapiro

learned that additional false, negative articles were posted about him online.  For example, one article alleged that Shapiro became violent at a modeling photoshoot while drunk and apparently on drugs and that Shapiro had stolen from the photographer.  Jacobson told Victoria Pressley, a mutual acquaintance of Jacobson and Shapiro, that she had paid for the Law Enforcement Today article and other false articles about Shapiro.  Around the same time, an anonymous Instagram account posted links to the Law Enforcement Today articles and posted a photograph of a rat.  Jacobson posted the same depiction of a rat on her personal Instagram.

Shortly thereafter, around September 2021, Him-Eros shuttered.  The company "never got off the ground," which Shapiro attributes to the negative press and postings about him and the company.  The negative press about Shapiro, however, continued.  In October 2021, Law Enforcement Today published an article, which claimed that Shapiro "is nothing more than a common criminal" who was "under investigation for sex trafficking and drugs" and referenced the report that Shapiro had become violent and stole at a photoshoot while intoxicated.  Conflict International also hung posters around New York City, which included photographs of Shapiro and Lutek and suggested that the two were involved in human trafficking.

Despite the negative publicity, Shapiro continued his efforts to find modeling work.  In May 2022, Shapiro met Joseph DeAcetis.  DeAcetis is a fashion designer in New York City who has three decades' experience in the industry and has worked with numerous major fashion brands.  DeAcetis's initial impression was that Shapiro was "a very talented model, with the potential to work with high-profile brands and casting agencies."

On May 13, 2022, Jacobson contacted DeAcetis and asked him questions about Shapiro's personal life, including whether he was romantically involved with Pressley.  In May 2022, a third article appeared in Law Enforcement Today, repeating the allegations that Shapiro had

become violent and stolen on the set of a photoshoot and alleging that Shapiro appeared on "porn websites." Two months later, on July 29, 2022, DeAcetis received an anonymous text and email, both of which contained a link to an online article referring to Shapiro as a violent and dangerous individual. As a result of receiving these messages, DeAcetis terminated his relationship with Shapiro.

Shapiro's relationship with EMG also proved fruitless. Shapiro ultimately landed no modeling jobs from EMG, and in September 2022, he requested to terminate his relationship with the agency. EMG permitted Shapiro to terminate the contract, and at her deposition in this case, EMG's owner agreed that there was nothing about Shapiro's "background, or personal life, or anything that [she] had read about him that got in the way of [her] relationship with him."

**B.      Plaintiff Qvist**

Shapiro and Plaintiff Johanna Qvist became romantically involved in March 2021. Qvist works as a nurse. During the period relevant to this action, she worked with Cross Country, which is an agency that placed her in temporary roles with hospitals in various locations. Through Cross Country, Qvist was placed at Albany Medical Center in Albany, New York between February and September 2022. During this period, the hospital received a negative anonymous call about Qvist. The call prompted an investigation of Qvist, although the hospital did not terminate her contract, demote her or reduce her pay.

In September 2022, around the time when Qvist's role in Albany ended, Cross Country attempted to place Qvist at Mt. Sinai Hospital in New York, New York. Mt. Sinai denied her job application, which had never happened before in Qvist's career. Qvist's recruiter told Qvist that it was "strange" that Mt. Sinai denied her application, and the recruiter asked whether Qvist "had

4

any issues with the hospital in the past." That same month, Cross Country placed Qvist at Metropolitan Hospital, also in New York, New York, for a three-month period.

### C.    The Present Action

On May 12, 2023, Plaintiffs filed this action asserting various claims against Defendants under state and federal law. All claims were dismissed, except the claim for tortious interference with business relations brought by both Plaintiffs against both Defendants. *See Shapiro v. Jacobson*, No. 23 Civ. 3964, 2024 WL 3675943, at *1 (S.D.N.Y. Aug. 5, 2024). Defendants move for summary judgment on the remaining claim.

## II.    STANDARD

### A.    Summary Judgment Legal Standard

In evaluating a motion for summary judgment, a court must "construe the record evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor." *Torcivia*, 17 F.4th at 354. Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[A] genuine dispute as to a material fact precludes summary judgment where the evidence is such that a reasonable jury could decide in the non-movant's favor."[2] *Capitol Recs., LLC v. Vimeo, Inc.*, 125 F.4th 409, 418 (2d Cir.), *amended on reh'g on other grounds*, 151 F.4th 13 (2d Cir. 2025). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248 (1986); *Saleem v. Corp. Transp. Grp.*, 854 F.3d 131, 148 (2d Cir. 2017).

---

[2] Unless otherwise indicated, in quoting cases, all internal quotation marks, footnotes and citations are omitted, and all alterations are adopted.

When the movant properly supports its motion with evidentiary materials, the opposing party must establish a genuine issue of fact by citing materials in the record.  Fed. R. Civ. P. 56(c)(1)(A).  "A party opposing summary judgment normally does not show the existence of a genuine issue of fact to be tried merely by making assertions that are based on speculation or are conclusory."  *S. Katzman Produce Inc. v. Yadid*, 999 F.3d 867, 877 (2d Cir. 2021).  Local Rule 56.1(b) requires the non-moving party to admit or deny each statement of material fact proffered, with each denial "followed by citation to evidence that would be admissible."  Local Civ. R. 56.1(b)-(d).  When a non-movant fails to support its purported denial of a Statement of Fact with admissible evidence, that fact "will be deemed to be admitted for the purposes of the motion." *Id*. R. 56.1(c).  Where "the record does not support the assertions . . . those assertions should be disregarded."  *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 74 (2d Cir. 2001), *abrogated on other grounds by Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167 (2009); *accord Chinese Am. Citizens All. Greater New York v. N.Y.C. Dep't of Educ.*, 802 F. Supp. 3d 483, 501 (S.D.N.Y. 2025).

## B.    Tortious Interference Legal Standard

New York law governs Plaintiffs' tortious interference claims because the parties' briefing assumes that New York law applies.  *Murphy v. Snyder (In re Snyder)*, 939 F.3d 92, 100 n.2 (2d Cir. 2019) ("[I]mplied consent is . . . sufficient to establish the applicable choice of law.").  Under New York law, the elements of tortious interference with business relations are "(1) business relations with a third party, (2) the defendant's interference with those business relations, (3) the defendant acted for the sole purpose of harming plaintiff or used wrongful means, and (4) injury to the business relationship."  *Valkyrie AI LLC v. PriceWaterhouseCoopers LLP*, 221 N.Y.S.3d 101, 103 (1st Dep't 2024); *accord 16 Casa Duse, LLC v. Merkin*, 791 F.3d 247, 261 (2d Cir. 2015) (New York law).  "Tortious interference with prospective economic

6

relations requires an allegation that plaintiff would have entered into an economic relationship but for the defendant's wrongful conduct." *Premium Mortg. Corp. v. Equifax, Inc.*, 583 F.3d 103, 107 (2d Cir. 2009) (New York law); *Gans v. Wilbee Corp.*, 158 N.Y.S.3d 81, 83 (1st Dep't 2021).

To establish the third element (wrongful means), a plaintiff must establish that a defendant's conduct "amount[s] to a crime or an independent tort," or that the defendant acted "for the sole purpose of inflicting intentional harm on plaintiffs." *Carvel Corp. v. Noonan*, 818 N.E.2d 1100, 1103 (N.Y. 2004); *16 Casa Duse, LLC*, 791 F.3d at 262.  Defamation suffices as a predicate tort for this element.  *See Wolberg v. IAI N. Am., Inc.*, 77 N.Y.S.3d 348, 351 (1st Dep't 2018); *Glob. Supplies NY, Inc. v. Electrolux Home Prods., Inc.*, No. 21-674, 2022 WL 815795, at *3 (2d Cir. Mar. 18, 2022) (summary order) (New York law).

## III.    DISCUSSION

### A.    Qvist

Summary judgment is granted on Qvist's claim because no reasonable jury could find that Qvist has established the elements of tortious interference with business relationships.

#### 1.    Albany Medical Center

Summary judgment is granted on Qvist's claim that Defendants tortiously interfered with her relationship with Albany Medical Center.

First, Qvist fails to oppose Defendants' motion with respect to this claim.  "In a counseled case, a court may, when appropriate, infer from a party's partial opposition that relevant claims or defenses that are not defended have been abandoned." *Farag v. XYZ Two Way Radio Serv., Inc.*, No. 22-1795, 2023 WL 2770219, at *2 (2d Cir. Apr. 4, 2023) (summary order); *accord Sweet Baby Lightning Enters. LLC v. Keystone Cap. Corp.*, No. 21 Civ. 6528,

2023 WL 5334016, at *4 (S.D.N.Y. Aug. 18, 2023).  Qvist's failure to oppose summary judgment results in the claim being abandoned.

Qvist's claim as to Albany Medical Center also fails on the merits because no reasonable jury could find that Qvist suffered damages caused by Defendants' actions.  Qvist was not fired from Albany Medical Center, nor did the hospital demote her or reduce her pay.  *See Caputo v. IESI NY Corp.*, 211 N.Y.S.3d 81, 82-83 (1st Dep't 2024) (dismissing claim for tortious interference when the plaintiff did not suffer adverse employment outcome).  Although Albany Medical Center investigated Qvist as a result of an anonymous phone call that a reasonable jury could attribute to Defendants, she does not assert any damages arising out of this investigation.

### 2.    Mt. Sinai Hospital

Summary judgment is granted on Qvist's claim for tortious interference with Mt. Sinai Hospital.  No reasonable jury could find on the current record that Defendants interfered with Qvist's relationship with Mt. Sinai.

To succeed on a tortious interference claim, a plaintiff must demonstrate the defendant's tortious conduct directed at a third party and but-for causation.  *See Gans*, 158 N.Y.S.3d at 83 (but-for causation); *Carvel Corp.*, 818 N.E.2d at 1105 (holding that tortious interference requires "conduct directed . . . at the party with which the plaintiff has or seeks to have a relationship").  Qvist's claim fails because she provides no evidence that Defendants directed tortious conduct at Mt. Sinai.

In support of the claim, Qvist relies on the facts that (1) she was not offered a position with Mt. Sinai; (2) her recruiter told her it was "strange" that she was not offered the position and (3) around the same time she was denied for the position, Jacobson and/or Komorek committed other acts targeted at Qvist (including attempting to have her fired from Albany

Medical Center and hanging posters outside her apartment).  Qvist argues that, based on this evidence, the jury could conclude that Jacobson or Komorek caused Mt. Sinai to be contacted regarding Qvist's then-pending application, which resulted in the hospital denying Qvist's application.  This argument is unavailing.  The record contains no evidence that any third party contacted Mt. Sinai regarding her application and no evidence about why Mt. Sinai denied her application.  On this record, no reasonable jury could infer that a third party's contact with Mt. Sinai -- and specifically a contact by Defendants -- was the but-for cause of the hospital's rejecting Qvist's employment application.

**B.    Shapiro**

Summary judgment is granted to Defendants on Shapiro's claim for tortious interference with his relationship with EMG but is denied as to Shapiro's claim for tortious interference with his relationships with DeAcetis.  Shapiro's claim for tortious interference with Him-Eros is dismissed because Shapiro lacks Article III standing to bring the claim.

**1.    EMG**

Summary judgment is granted on Shapiro's claim for tortious interference with his relationship with EMG because no reasonable jury could find that Defendants were the but-for cause of any injury to Shapiro's relationship with EMG, which is a required element of the claim.  *See RSR Corp. v. Leg Q LLC*, 186 N.Y.S.3d 126, 129 (1st Dep't 2023).

EMG's owner testified in this case that nothing about Shapiro's "background, or personal life, or anything that [she] had read about him that got in the way of [her] relationship with him."  Shapiro does not dispute that EMG's owner made this statement but argues that a reasonable jury would not be required to credit the statement in light of Defendants' efforts to tarnish Shapiro's reputation while he worked with EMG.  Shapiro specifically describes an article attributable to

9

Defendants falsely stating that Shapiro had acted dangerously at a modeling photoshoot booked through EMG. Shapiro's arguments are unpersuasive. The record evidence is insufficient for a reasonable jury to find that, but for these or other actions taken by Defendants, Shapiro would have obtained modeling work through EMG.

### 2.    DeAcetis

Summary judgment is denied on Shapiro's claim for tortious interference with his relationship with DeAcetis.

A reasonable jury could conclude that Shapiro has established the elements of tortious interference as to DeAcetis. For the first element (existence of a business relationship), Shapiro met with DeAcetis in an effort to gain modeling work, and after meeting Shapiro, DeAcetis intended to help Shapiro gain modeling work. The record describes this relationship with sufficient specificity such that a reasonable jury could infer that Shapiro had a prospective business relationship with DeAcetis, through which DeAcetis may have helped Shapiro secure modeling opportunities. *See 16 Casa Duse*, 791 F.3d at 262. For the second element (intentional interference), a reasonable jury could conclude that Jacobson and/or Komorek interfered with that relationship. Jacobson once contacted DeAcetis directly about Shapiro. Shortly thereafter, DeAcetis received an anonymous outreach containing links to articles about Shapiro that, based on the evidence, a reasonable jury could tie to Jacobson and Komorek. Deposition of Victoria Pressley at 55:3-6 (Jan. 28, 2025), Dkt. 120-7 (Jacobson told Pressley that Jacobson had financed Law Enforcement Today articles); Komorek Affidavit (June 13, 2021), Dkt. 120-8 (Komorek met with Law Enforcement Today shortly before outlet published article). For the third element (wrongful means), a reasonable jury could conclude that Jacobson and Komorek acted solely to harm Shapiro or that the underlying articles were defamatory. For the fourth element (injury to

business relationship), DeAcetis states that, as a result of these messages, he terminated his relationship with Shapiro.

Defendants' contrary arguments lack merit.  At the threshold, Defendants argue that the declaration Plaintiffs submitted from DeAcetis is inadmissible on summary judgment because it is unsworn and does not comply with 28 U.S.C. § 1746.  This argument is unavailing because Plaintiffs, with leave, filed a corrected declaration complying with 28 U.S.C. § 1746.  Defendants also argue that DeAcetis's account of other entities' intentions is inadmissible hearsay that could not be admissible at trial.  This argument is unavailing because DeAcetis has a non-hearsay basis to testify regarding his own intentions to attempt to secure work for Shapiro, and Defendants' interference with Shapiro's relationship with DeAcetis suffices for tortious interference.

On the merits, Defendants argue that any injury to Shapiro resulted from general negative reputational harm, not the text message and email sent to DeAcetis.  This argument is unavailing because the jury could permissibly credit DeAcetis's statement that he terminated the relationship as a result of the anonymous text message and email.

Defendants also argue that Shapiro's relationship with DeAcetis cannot form the basis of a tortious interference claim because DeAcetis was "simply a potential middleman" between Shapiro and modeling opportunities.  This argument is unpersuasive because Shapiro may recover damages based on his relationship with DeAcetis.  *Kirch v. Liberty Media Corp.*, 449 F.3d 388 (2d Cir. 2006), which Defendants cite, is unavailing.  In *Kirch*, the Second Circuit held that an agent could not recover for tortious interference directed at a principal, *id.* at 400 -- but here, Shapiro is seeking to recover damages based on his relationship with a potential agent.

Komorek argues that he could not have been responsible for alleged interference against Shapiro after Komorek resigned from Conflict International in February 2022, including the anonymous communications with DeAcetis in July 2022.  A reasonable jury would not be compelled to draw this inference.  A different witness affiliated with Conflict International testified that Komorek continued to investigate Shapiro after Komorek resigned from Conflict International.

### 3.    Him-Eros

Shapiro's claim for tortious interference with his relationship with Him-Eros is dismissed pursuant to Federal Rule of Civil Procedure 12(h)(3) because Shapiro lacks Article III standing to bring the claim.

A court has an "an independent obligation to assure that standing exists, regardless of whether it is challenged by any of the parties." *New Jersey v. Bessent*, 149 F.4th 127, 141 (2d Cir. 2025).  Standing must exist for each claim asserted.  *See B.B. by Rosenthal v. Hochul*, 166 F.4th 259, 271 (2d Cir. 2026).  If a plaintiff "lack[s] Article III standing, a court has no subject matter jurisdiction to hear their claim." *Bohnak v. Marsh & McLennan Cos.*, 79 F.4th 276, 283 (2d Cir. 2023).  To satisfy Article III's standing requirement, "a plaintiff must demonstrate: (1) injury-in-fact, which means an actual or imminent and concrete and particularized harm to a legally protected interest; (2) causation of the injury, which means that the injury is fairly traceable to the challenged action of the defendant; and (3) redressability, which means that it is likely, not speculative, that a favorable decision by a court will redress the injury." *Knight v. City of New York*, 164 F.4th 173, 177-78 (2d Cir. 2026).

An individual plaintiff does not "have standing to assert claims for any injuries suffered by [a] corporate entity, even if he was personally aggrieved by [the defendant's] conduct and

may have faced the risk of financial loss as a result." *Karkare ex rel. JN v. International Association of Bridge, Structural, Ornamental & Reinforcing Iron Workers*, 140 F.4th 60, 65 (2d Cir. 2025). "[I]t is the corporation -- having an independent legal identity -- that must seek, on its own or derivatively, to redress its injury." *Bingham v. Zolt*, 66 F.3d 553, 561-62 (2d Cir. 1995); *see Martin v. United Bridge Cap., LP*, No. 21-1790, 2022 WL 2166399, at *2 (2d Cir. June 16, 2022) (summary order) (same for limited liability company). "Absent a direct individual injury, a company's member lacks standing to sue for an injury to the company." *Liberty Sackets Harbor LLC v. Vill. of Sackets Harbor*, 776 F. App'x 1, 3 (2d Cir. 2019) (summary order); *accord Red Rock Sourcing, LLC v. JGX, LLC,* No. 21 Civ 1054, 2025 WL 524024, at *9 (S.D.N.Y. Feb. 18, 2025). A shareholder cannot recover asserted financial losses merely resulting from defendants' efforts to "thwart[] and sabotage[] a company he had invested in." *Trident Cap. Grp. Fund I LLC v. Nasdaq Stock Mkt., LLC*, No. 24 Civ. 2318, 2025 WL 35941, at *2 (E.D.N.Y. Jan. 6, 2025); *Chowdhury v. VEON Ltd.*, No. 21 Civ. 3527, 2022 WL 956271, at *4 (S.D.N.Y. Mar. 30, 2022).

Shapiro lacks standing for this claim because the only injuries he asserts stem indirectly from the closure of Him-Eros. Shapiro asserts that, if Him-Eros had not shut down, the company would have made $662,400 annually, and he is entitled to his share of that projected revenue as damages. Shapiro argues that this injury is particularized because Defendants' campaign to shutter Him-Eros directly targeted him, which destroyed the value of the money, personal services and labor he invested in Him-Eros and his anticipated economic opportunity had the company been successful. This argument is unavailing because, although Shapiro may have been "personally aggrieved" by Defendants' conduct, *Karkare*, 140 F.4th at 65, his only asserted

13

harm stems from the anticipated return on his investment in Him-Eros, which does not suffice for Article III standing.  *See Trident*, 2025 WL 35941, at *2.

*Trident* is instructive.  There, the plaintiff, which had invested in the sponsor of a separate investment vehicle, asserted claims against NASDAQ because NASDAQ successfully thwarted an anticipated merger between the investment vehicle and a target company.  *Id.* at *1.  There, as here, the court dismissed the plaintiff's claim for lack of standing because the plaintiff's injuries resulted indirectly from injuries to the company in which the plaintiff had invested, rather than from injuries inflicted directly on the plaintiff -- despite the plaintiff's operational and financial involvement in the investment vehicle.  *Id.* at *2.  The portion of Shapiro's claim asserting tortious interference with Him-Eros is dismissed.

## IV.    CONCLUSION

For the foregoing reasons, Defendants' motions for summary judgment are **GRANTED** in part and **DENIED** in part.  Summary judgment is granted on Qvist's claim.  Summary judgment is granted on Shapiro's claim for tortious interference as to EMG.  Summary judgment is denied on Shapiro's claim for tortious interference as to DeAcetis.  Shapiro's claim for tortious interference as to Him-Eros is dismissed for lack of subject matter jurisdiction.

The Clerk of Court is respectfully directed to close the motions at Dkt. Nos. 115 and 116 and to terminate Johanna Qvist as plaintiff.

Dated:  March 26, 2026
       New York, New York

LORNA G. SCHOFIELD
UNITED STATES DISTRICT JUDGE

14